## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **JESSICA PRITCHETT,** | § | |
| **an individual,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CAUSE NO. _____** |
| **vs.** | § | |
| | § | |
| **ARGON MEDICAL DEVICES, INC.,** | § | |
| **REX MEDICAL, INC., d/b/a** | § | |
| **REX MEDICAL, L.P. and REX** | § | |
| **MEDICAL, L.P.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

## COMPLAINT

Plaintiff Jessica Pritchett, by and through her undersigned attorney, hereby sues Defendants Argon Medical Devices, Inc., Rex Medical, Inc., d/b/a Rex Medical, L.P, and Rex Medical, L.P., and alleges as follows:

## PARTIES

1.      Plaintiff Jessica Pritchett ("Plaintiff") at all times relevant to this action resided in, continues to reside in, and is a citizen of, the State of Florida.

2.      Defendant Argon Medical Devices, Inc. is a Delaware corporation that maintains its corporate headquarters and principal place of business in Collin County, Texas at 5151 Headquarters Drive, Suite 201, Plano, Texas.  Argon Medical Devices, Inc. is registered to do business in the State of Florida.  Argon Medical Devices, Inc. may be served with process by delivering a Summons with a copy of this Complaint attached thereto to its registered agent,

Cogency Global, Inc., 115 North Calhoun Street, Suite 4, Tallahassee, Florida 32301.   Argon Medical Devices, Inc., has conducted business in and derived substantial revenue from sales of its products, including the Defendants' IVC filters, in Florida.

3.      Defendant Rex Medical, Inc. d/b/a Rex Medical, L.P. is a Pennsylvania corporation and the general partner of Defendant Rex Medical, L.P.  Defendant Rex Medical, Inc.'s principal place of business is located at 555 E. North Lane, Suite 5035, Conshohoken, Pennsylvania 19428. Rex Medical, Inc. may be served with process by delivering a Summons with a copy of this Complaint attached thereto, via certified mail, return receipt requested, to its president, William W. Gardner at 1100 E. Hector Street, Suite 245, Conshohoken, Pennsylvania 19428.  Rex Medical, Inc. has conducted business in and derived substantial revenue from sales of its products, including the Defendants' IVC filters, in Florida.

4.      Defendant Rex Medical, L.P. is a partnership organized under the laws of the State of Pennsylvania with its principal place of business located 555 E. North Lane, Suite 5035, Conshohoken, Montgomery County, Pennsylvania 19428.  Rex Medical, L.P. may be served with process by delivering a Summons with a copy of this Complaint attached thereto, via certified mail, return receipt requested, to its general partner Rex Medical, Inc., by serving William W. Gardner, President of Rex Medical, Inc. at 1100 E. Hector Street, Suite 245, Conshohoken, Montgomery County, Pennsylvania 19428.  Defendant Rex Medical, Inc. is the parent company, and according to the Certificate of Limited Partnership filed with the Pennsylvania Department of State on February 29, 1996, the only general partner of Defendant Rex Medical, L.P.  There are no limited partners identified in the filings obtained from the Pennsylvania Department of State.

5.      Defendant Argon Medical Devices, Inc. shall be referred to herein as "Argon."

**COMPLAINT** – Page 2

6.      Defendants Rex Medical, Inc. d/b/a Rex Medical, L.P. and Rex Medical, L.P. shall be referred to herein individually by name or jointly as the "Rex Defendants."

7.      At all times alleged herein, the Rex Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

8.      At all times herein mentioned, each of the Rex Defendants was the agent, servant, partner, predecessors in interest, and joint venturer of each other and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture.

9.      At all times herein mentioned, Argon was the agent, servant, partner, predecessor in interest, and joint venturer of the Rex Defendants and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture.

10.     At all times relevant to this cause of action, Argon and the Rex Defendants were conducting, and continue to conduct, business throughout the United States, including the State of Florida.  At all times relevant to this cause of action, Argon and the Rex Defendants maintained, and continue to maintain, significant, systematic, and continuous contacts with the State of Florida. Argon and the Rex Defendants develop, manufacture, sell, and distribute medical devices for use in various applications including vascular surgical products throughout the State of Florida, the United States, and around the world, including Miami-Dade County. Argon's and the Rex Defendants' products include the Option Elite Vena Cava Filter, which is used for the prevention

of recurrent pulmonary embolism via placement in the vena cava.

11.     Upon information and belief, Argon and the Rex Defendants, each and all, expected or should have expected their acts to have consequence within the United States of America and the State of Florida, and derived substantial revenue from interstate commerce within the United States and the State of Florida.

<u>**JURISDICTION AND VENUE**</u>

12.     Personal jurisdiction is proper pursuant to Fla. Stat. § 48.193 and 28 U.S.C. § 1332. Argon and the Rex Defendants have conducted and continue to conduct substantial and systematic business activities related to their IVC filters, including the Option Elite™ Vena Cava Filter (hereinafter "Option Elite filter") at issue in this case, in this jurisdiction.  Such activities include, but are not limited to: (a) sales of IVC filters, including the Option Elite filter at issue in this case, in this jurisdiction; (b) hiring, training, and deploying employees, including managers and sales representatives, in this jurisdiction; (c) advertising and marketing of their IVC filters, including the Option Elite filter at issue in this case, in this jurisdiction; (d) maintenance of company files and equipment relating to the Option Elite filter at issue in this case, in this jurisdiction; (e) payment of employee salaries in this jurisdiction; and (f) maintenance of a website directed to all states, including Florida.  Argon and the Rex Defendants committed tortious acts within the State of Florida.  Argon and the Rex Defendants also caused injury to persons or property within the State of Florida arising out of acts or omissions by Argon and the Rex Defendants outside this state at or about the time of the Plaintiff's injury; while Argon and the Rex Defendants were engaged in solicitation or service activities within the State of Florida; and/or while products,

materials, or things processed, serviced, or manufactured by Argon and the Rex Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use.

13.     There is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs. *See* 28 U.S.C. § 1332.

14.     Venue is properly laid pursuant to 28 U.S.C. § 1391(b)(2) and (d), as Argon and the Rex Defendants' Option Elite filter was marketed, sold, implanted, and failed in Miami-Dade County, Florida, and the Defendants are corporations subject to personal jurisdiction in the district.

15.     Plaintiff's claims in this action are brought solely under state law. Plaintiff does not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision.  Thus, there is no federal jurisdiction in this action on the basis of a federal question under 28 U.S.C. § 1331.

## ALTERNATIVE ALLEGATIONS

16.     To the extent any allegation herein is inconsistent with any other allegation, such inconsistent allegations are pleaded in the alternative pursuant to Fed. R. Civ. P. 8(d)(3).

## GENERAL FACTUAL ALLEGATIONS

17.      Plaintiff brings this case for serious, life-threatening injuries she suffered, and will continue to suffer, as a result of Argon's and the Rex Defendants' surgically implanted medical device, the Option Elite filter, that was implanted at Holmes Regional Medical Center located in Melbourne, Florida on or about November 23, 2011.

18.     Argon and the Rex Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and/or sell products such as IVC filters that are marketed

and sold as a temporary/retrievable device to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava. One such product is the Option Elite Vena Cava Filter.

19.    The Defendants sought Food and Drug Administration ("FDA") clearance to market the Option Elite filter and/or its components under Section 510(k) of the Medical Device Amendment.

20.    On or about December 17, 2013, the Defendants obtained FDA clearance to market the Option Elite filter device and/or its components under Section 510(k) of the Medical Device Amendment.

21.    Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of said device. The device is then cleared by the FDA under Section 510(k). The Defendants claimed that Argon Option Elite filter was substantially equivalent to the Option IVC filter.

22.    An IVC filter, like the Option Elite Filter, is a device designed to filter blood clots (called "thrombi") that would otherwise travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

23.    The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs, they are considered "pulmonary emboli" or PE.

**COMPLAINT** – Page 6

24.     An IVC filter, like the Option Elite filter, is ostensibly designed to prevent thromboembolic events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

25.     The Option Elite filter was designed, manufactured marketed, and sold as a retrievable filter.   The Defendants represented that the Option Elite filter was based on the Option™ IVC filter.

26.     The Option Elite filter consists of shape memory nitinol struts emanating from a central location which is represented to be designed for clot capture.

27.     On or about November 23, 2011, Plaintiff was implanted with an Argon Option Elite filter at Holmes Regional Medical Center, Melbourne, Florida.

28.     On or about August 25, 2017, Plaintiff underwent a computerized tomography scan ("CT scan") of her kidneys, ureters and bladder.

29.     On or about August 25, 2017, Plaintiff was informed that the CT scan revealed that a strut was penetrating the wall of the inferior vena cava.

30.     On or about August 30, 2017, Plaintiff underwent a complex percutaneous retrieval attempt, where the filter was found to be fractured with two (2) fragments seen outside the inferior vena cava.   After multiple attempts, the filter was removed but the fragments could not be retrieved.

31.     On or about November 7, 2017, Plaintiff underwent a CT scan of her abdomen and pelvis.

32.     On or about November 7, 2017, Plaintiff was informed that the CT scan revealed that there were linear metallic densities, which measure 6 mm, 17 mm, and 21 mm respectively in the retrocaval space.

33.     Plaintiff's injury was inherently undiscoverable or objectively verifiable such that, despite Plaintiff's reasonable diligence, she was unable to discover her injury until on or after August 25, 2017.

34.     Plaintiff is at risk for future progressive perforations and potential fractures of the Option Elite filter, which could further injure adjacent organs and blood vessels.  Plaintiff faces numerous health risks, including the risk of death.  Plaintiff will require ongoing medical care and monitoring for the rest of her life.  It is unlikely that the filter can be retrieved by any means other than an open surgical procedure.

35.     At all times relevant hereto, the Option Elite filter was widely advertised and promoted by Argon and the Rex Defendants as a safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

36.     At all times relevant hereto, Argon and the Rex Defendants knew the Option Elite filter was defective and knew that the defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

37.     Argon and the Rex Defendants failed to disclose to physicians, patients, or Plaintiff that its Option Elite filter was subject to tilting, embedment, breakage, and migration or the appropriate degree of risk of perforation and damage to the vena cava wall.

38.     At all times relevant hereto, Argon and the Rex Defendants continued to promote the Option Elite filter as safe and effective even though the clinical trials that had been performed were not adequate to support long- or short-term efficacy.

39.     Argon and the Rex Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Option Elite filter, as aforesaid.

40.     The failure of the Option Elite filter is attributable in part to the fact that it suffers from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

41.     At all times relevant hereto, Argon and the Rex Defendants failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Option Elite filter, including, but not limited to, the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

42.     The Option Elite filter was designed, manufactured, distributed, sold, and/or supplied by Argon and the Rex Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Argon's and the Rex Defendants' knowledge of the product's failure and serious adverse events.

43.     At all times relevant hereto, the officers and/or directors of Argon and the Rex Defendants named herein participated in, authorized, and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and

dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

## CORPORATE/VICARIOUS LIABILITY

44.    At all times herein mentioned, Argon and Rex Defendants were agents, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

45.    There exists and, at all times herein mentioned, there existed a unity of interest in ownership between Argon and Rex Defendants, such that any individuality and separateness between them have ceased and they are alter egos.  Adherence to the fiction of the separate existence of Argon and Rex Defendants as entities distinct from each other will permit an abuse of the corporate privilege, would sanction a fraud, and/or would promote injustice.

46.    At all times herein mentioned, Argon and Rex Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing, advertising for sale, and/or selling products for use by the Plaintiff.  As such, each Defendant is individually, as well as jointly and severally, liable to the Plaintiff for Plaintiff's damages.

47.    At all times herein mentioned, the officers and/or directors of Argon and Rex Defendants named herein participated in, authorized, and/or directed the production, marketing, promotion, and sale of the aforementioned products when they knew, or with the exercise of

reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff.

## COUNT I
## NEGLIGENCE

48.      Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

49.      At all times relevant to this cause of action, Argon and Rex Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Option Elite IVC filter, including Option Elite filter at issue in this case.

50.      Argon and Rex Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed, and sold Option Elite filter that was implanted into Plaintiff.

51.      Argon and Rex Defendants' had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of the Option Elite IVC filter so as to avoid exposing others to foreseeable and unreasonable risks of harm.

52.      Argon and Rex Defendants knew or should have known that the Option Elite filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

53.      At the time of manufacture and sale of the Option Elite filter, Argon and the Rex Defendants knew or reasonably should have known that Argon and the Rex Filter:

   a.  Was designed and manufactured in a way so as to present an unreasonable risk of tilt and or embedment;

**COMPLAINT** – Page 11

b. Was designed and manufactured so as to present an unreasonable risk perforation and/or damage to the vena cava wall;

c. Was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

d. Was designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device;

e. Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/or

f. Was designed and manufactured in a way that increased the potential for recurrent thrombosis and clot formation.

54.     Argon and the Rex Defendants breached their duty of reasonable care and were negligent in:

a. Unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with the Option Elite Filter, specifically its incidents of tilt, embedment, fracture, migration, perforation, recurrent thrombosis and other failures;

b. Unreasonably and carelessly designed, manufactured, marketed and sold a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body; and

c. Unreasonably and carelessly designed, manufactured, marketed and sold a product that presented a risk of harm to Plaintiff and others similarly situated in that it was prone to fail.

55.     A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

56.     As a direct and proximate result of Argon's and the Rex Defendants' negligence, as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, disability, and other losses, in an

amount to be determined at trial.

## COUNT II
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

57.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

58.     Argon and the Rex Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Option Elite filter, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

59.     At the time Argon and the Rex Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, Argon and the Rex Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

60.     Argon and the Rex Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the Option Elite filter, which was implanted in Plaintiff, that the filter posed a significant risk of device failure (tilt, embedment, perforation of the vena cava wall, fracture, migration and recurrent thrombosis) and resulting serious injuries.

61.     Argon and the Rex Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.  Argon and the Rex Defendants further had a duty to warn of dangers and proper safety

instructions that it became aware of even after the device was distributed and implanted in Plaintiff.

62.    Argon and the Rex Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Option Elite filter, and further failed to adequately provide instructions on the safe and proper use of the device.  These failures rendered the Option Elite filter unreasonably dangerous to Plaintiff.

63.    No health care provider, including Plaintiff's, or patient would have used Argon filter in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

64.    The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

65.    Plaintiff and Plaintiff's health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

66.    Therefore, the Option Elite filter implanted in Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling, and/or instructions accompanying the product.

67.    The Option Elite filter implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed, and sold by Argon and the Rex Defendants.

68.    As a direct and proximate result of Argon's and the Rex Defendants' lack of sufficient warning and/or instructions, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, disability,

and other losses, in an amount to be determined at trial.

## COUNT III
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

69.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

70.     At all times relevant to this action, Argon and the Rex Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed, and sold into the stream of commerce the Option Elite filter, including the one implanted in Plaintiff.

71.     The Option Elite filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left Argon's and the Rex Defendants' possession.  In the alternative, any changes that were made to Option Elite filter implanted in Plaintiff were reasonably foreseeable to Argon and the Rex Defendants.

72.     The Option Elite filter implanted in Plaintiff was defective in design in the following ways:

   a. It failed to perform as safely as persons who ordinarily use the product would have expected at the time of use; and

   b. Its risks of harm exceeded its claimed benefits.

73.     Argon and the Rex Defendants knew that safer alternative designs were available, which would have prevented or significantly reduced the risk of the injury presented by Option Elite filter. Further, it was economically and technologically feasible at the time the filter left the control of the Defendants to prevent or reduce the risk of such a dangerous event by application of existing, or reasonably achievable, scientific knowledge.

74.     Plaintiff and Plaintiff's health care providers used the Option Elite filter in a manner that was reasonably foreseeable to Argon and the Rex Defendants.

75.     Neither Plaintiff, nor Plaintiff's health care providers, could have, by the exercise of reasonable care, discovered the device's defective condition or perceived its unreasonable dangers prior to Plaintiff's implantation with the device.

76.     The defective design of the Option Elite filter was a producing cause of Plaintiff's injuries.

77.     As a result of the Option Elite filter's defective design, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, disability, and other losses, in an amount to be determined at trial.

## COUNT IV
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

78.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

79.     Argon and the Rex Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Option Elite filter that was implanted into Plaintiff.

80.     The Option Elite filter implanted into Plaintiff contained a condition or conditions that rendered it unreasonably dangerous, which Argon and Rex Defendants did not intend, at the time it left Argon and Rex Defendants' control and possession.

81.     Plaintiff and Plaintiff's health care providers used the device in a manner that was reasonably foreseeable to Argon and the Rex Defendants.

82.    As a result of this condition or these conditions, the Option Elite filter injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

83.    As a direct and proximate result of the Option Elite filter's manufacturing defects, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

### COUNT V
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### AND FITNESS FOR A PARTCULAR PURPOSE

84.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

85.    Argon and the Rex Defendants breached implied warranties under the Florida Uniform Commercial Code, N.M. Stat § 55-2-314.

86.    At all times relevant to this action, the Rex and Argon Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold distributed into the stream of commerce the Option Elite IVC filter, including the one implanted in Plaintiff, for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

87.    At the time and place of sale, distribution, and supply of the Option Elite filter to Plaintiff by way of Plaintiff's health care providers and medical facilities, the Rex and Argon

Defendants expressly represented and warranted, by labeling materials submitted with the product, that the Option Elite filter was safe and effective for its intended and reasonably foreseeable use.

88.     Argon and Rex Defendants knew of the intended and reasonably foreseeable use of the Option Elite filter at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

89.     The Rex and Argon Defendants impliedly represented and warranted to the healthcare community, Plaintiff and Plaintiff's health care providers, that the Option Elite filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

90.     At the time the Option Elite filter left Argon and the Rex Defendants' possession, and at the time of Plaintiff's purchase from Defendants, the Option Elite filter was not in a merchantable condition, in that:

    a.  It was designed in such a manner so as to be prone to an unreasonably high incident of tilt, embedment, fracture, perforation of vessels and organs, and/or migration;

    b.  It was designed in such a manner so as to result in an unreasonably high incident of injury to the organs including the vena cava of its purchaser; and

    c.  It was manufactured in such a manner so that the Option Elite filter would weaken and fail.

91.     Additionally, implied warranties were breached as follows:

    a.  Argon and the Rex Defendants failed to provide the warnings or instructions and/or adequate warnings or instructions which a manufacturer exercising reasonable care would have provided concerning the risks, in light of the likelihood that the Option Elite filter would cause harm;

    b.  Argon and the Defendants manufactured and/or sold the Option Elite filter and that

filter did not conform to representations made by the Defendants when it left Argon's and the Rex Defendants' control;

c. Argon and the Rex Defendants manufactured and/or sold the Option Elite filter, device that was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the Option Elite filter design or formulation exceeded the benefits associated with that design. These defects existed at the time the product left Argon's and the Rex Defendants' control; and

d. Argon and the Rex Defendants manufactured and/or sold the Option Elite filter when it deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical units manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the product left Argon's and the Rex Defendants' control.

92.     Further, Argon's and the Rex Defendants' marketing of the Option Elite filter was false and/or misleading.

93.     Plaintiff and Plaintiff's health care providers reasonably relied on the superior skill and judgment of the Rex and Argon Defendants as the designers, researchers and manufacturers of the product, as to whether the Option Elite filter was of merchantable quality, safe and fit for its intended use and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Option Elite filter was manufactured and sold.

94.     The Rex and Argon Defendants placed the Option Elite filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Option Elite filter was manufactured and sold.

95.     Argon and Rex Defendants breached their implied warranties because the Option Elite filter was not fit for its intended use and purpose.

96.     As a direct and proximate result of the Option Elite filter's defects, as described

herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, disability, and other losses, in an amount to be determined at trial.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

97.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

98.     Argon and the Rex Defendants breached express warranties under the Florida Uniform Commercial Code, N.M. Stat. § 55-2-313.

99.     Plaintiff, through her medical providers, purchased the Option Elite filter from Argon and the Rex Defendants.

100.    At the time and place of sale, distribution, and supply of the Option Elite filter to Plaintiff, Argon and the Rex Defendants expressly represented and warranted that it was safe.

101.    Plaintiff, through her attending physicians, relied on these representations in determining which IVC filter to use for implantation in Plaintiff.

102.    At the time of Plaintiff's purchase from Argon and the Rex Defendants, the Option Elite filter was not safe, in that:

   a.   It was designed in such a manner so as to be prone to an unreasonably high incident of tilt, embedment, fracture, perforation of vessels and organs, and/or migration;

   b.   It was designed in such a manner so as to result in an unreasonably high incident of injury to the organs including the vena cava of its purchaser; and

   c.   It was manufactured in such a manner that it would weaken and fail.

103.     Argon's and the Rex Defendants' filter was unfit and unsafe for use by users as it

posed an unreasonable and extreme risk of injury to persons using said products, and accordingly, Argon and the Rex Defendants breached their expressed warranties associated with the product.

104.   As a direct and proximate result of the Option Elite filter's defects, as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, disability, and other losses, in an amount to be determined at trial.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**

105.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

106.   At all times relevant to this cause, and as detailed above, Argon and the Rex Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information, concerning the Option Elite filter, including, but not limited to, misrepresentations relating to the following subject areas:

   a.   The safety of the Option Elite filter;

   b.   The efficacy of the Option Elite filter;

   c.   The rate of failure of the Option Elite filter; and

   d.   The approved uses of the Option Elite filter.

107.    The information distributed by Argon and the Rex Defendants to the public, the medical community, and Plaintiff's health care providers was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing

material representations, which were false and misleading and contained omissions and concealment of the truth about the dangers of the use of the Option Elite filter. These materials included instructions for use and warning document that was included in the package of the Option Elite filter that was implanted in Plaintiff.

108.    Argon and the Rex Defendants did not exercise reasonable care or competence in communicating the information. Argon and the Rex Defendants made the foregoing misrepresentations knowing that they were false or without reasonable basis.

109.    Argon's and the Rex Defendants' intent and purpose in making these representations was: (1) to deceive and defraud the public and the medical community, including Plaintiff's health care providers; (2) to gain the confidence of the public and the medical community,  including Plaintiff's health care providers; (3) to falsely assure them of the quality of the Option Elite filter and its fitness for use; and (4) to induce the public and the medical community,  including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use the Option Elite filter.

110.    The foregoing representations and omissions by Argon and the Rex Defendants were in fact false.  The Option Elite filter is not safe, fit, and effective for human use in its intended and reasonably foreseeable manner.  The use of the Option Elite filter is hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered.

111.    In reliance upon the false and negligent misrepresentations and omissions made by Argon and the Rex Defendants, Plaintiff and Plaintiff's health care providers were induced to, and did use the Option Elite filter, thereby causing Plaintiff to sustain severe and permanent personal

injuries.

112.    Argon and the Rex Defendants knew and had reason to know that Plaintiff, Plaintiff's health care providers, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by Argon and the Rex Defendants, and would not have prescribed and implanted same if the true facts regarding the device had not been concealed and misrepresented by Defendants.

113.    Argon and Rex Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons implanted with the Option Elite filter.

114.    At the time Argon and Rex Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Option Elite filter, Plaintiff and Plaintiff's health care providers were unaware of said Defendants' negligent misrepresentations and omissions.

115.    Plaintiff, Plaintiff's health care providers, and general medical community reasonably relied upon the foregoing misrepresentations and omissions made by Argon and the Rex Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Option Elite filter.

116.    Plaintiff's health care providers and Plaintiff's agents' reliance on the foregoing misrepresentations and omissions by the Rex and Argon Defendants was the direct and proximate cause of Plaintiff's injuries as described herein.  As a result of the Rex and Argon Defendants' misrepresentations and omissions, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**COMPLAINT** – Page 23

## PUNITIVE DAMAGES CLAIM

117.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

118.    Plaintiff is entitled to an award of punitive and exemplary damages based upon Argon and the Rex Defendants intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, as their complete and total disregard for the public safety and welfare constitute actual malice under Michigan.

119.    Argon and the Rex Defendants had knowledge of, and were in possession of evidence demonstrating that, the Option Elite filter was defective, unreasonably dangerous, and had a substantially higher failure rate than did other similar devices on the market.  Despite their knowledge, Argon and the Rex Defendants failed to, among other purposeful acts, inform or warn Plaintiff, Plaintiff's agents, or her health care providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall Argon filter from the market.

120.    As a direct, proximate, and legal result of Argon and the Rex Defendants acts and omissions as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff, Jessica Pritchett, prays for relief on the entire complaint, as follows:

a.    Judgment to be entered against Argon and the Rex Defendants on all causes of action of this Complaint, including but not limited to:

1.     Physical pain and suffering in the past and which, in reasonable probability, she will continue to suffer in the future;

2.     Physical impairment and incapacity in the past and which, in reasonable probability, she will continue to suffer in the future;

3.     Mental anguish in the past and which, in reasonable probability, she will sustain in the future;

4.     Reasonable and necessary medical expenses for treatment received in the past and, based upon reasonable medical probability, the reasonable medical expenses she will need in the future;

5.     Disfigurement in the past and which, in reasonable probability, she will continue to suffer in the future; and,

6.     Punitive damages.

b.     Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

c.     Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post judgment interest pursuant to the laws of the State of Florida as authorized by law on the judgments entered in Plaintiff's behalf; and,

d.     Such other relief the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

Dated:  August 25, 2021.                    Respectfully Submitted,


/s/ Joseph R. Johnson
Joseph R. Johnson
FL Bar No. 372250
jjohnson@babbitt-johnson.com
**BABBITT & JOHNSON, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561.684.2500

***Attorney for Plaintiff***

COMPLAINT – Page 25